The United States Court of Appeals for the Federal Circuit is now open in recession. God save the United States and this honorable Court. Good morning. We have five cases on the calendar this morning, one from the Board of Contract Appeals, three patent cases, and a veterans case that will be submitted on the briefs and not be argued. Our first case is Yurok Tribe v. U.S. Department of the Interior, 14-1529, Mr. Nesbitt. Good morning, Your Honors. May it please the Court, my name is Nate Nesbitt. I represent the Yurok Tribe. This appeal is about the Bureau of Indian Affairs' failure to approve or to decline the Tribe's Title I contract proposal within the 90 days set forth in the ISDA and its accompanying regulations. Pursuant to that act and its regulations, the Bureau's failure to decline the Tribe's proposal within that 90-day window resulted in the approval of… What kind of relief are you looking for? Is there any relief available? Given that the statute talks about transferability of services and not raising any funding available under existing programs, what's the relief here? The relief is a holding by the Court that a contract exists per the terms of the Tribe's contract proposal because the Bureau did not decline that proposal within 90 days. In short, a contract. The relief would be… It looks like the contract would give you zero, though. It's a contract for zero dollars. I think your question gets to the issue of whether a contract could come into being notwithstanding that the Bureau was not at the time of the Tribe's proposal providing directly to the Yurok Tribe the programs or services that it requested. As to that issue, there's no requirement in the act that the Bureau be directly providing the services that are the subject of the Title I proposal at the time of its proposal in order to give rise to a contract. The Self-Determination Act defines these contracts as those for programs or services, quote, otherwise provided to Indian Tribes and their members pursuant to federal law. So it would transfer over existing services. And I understand the argument that these services existed before at one time and current funding can be traced back to a point where some of these law enforcement activities were transferred to the Tribe. But what's left? I mean, they've already transferred all of these functions. There's no longer any money in the federal coffers to give you or to transfer. The statute does not allow raising funding above existing level. And if the existing level is zero, then funding can't be raised above zero. So the provision that I'm understanding, Your Honor, to mention is the secretarial amount provision, 451J1A, I believe, in the statute. And the language there sets a funding floor in the circumstance of requesting Tribes that is then the recipient of the programs or services that it is requesting. And so what that provision means is the BIA must provide at least that amount. That provision does not set a ceiling. The BIA is free to approve a proposal. But they're not providing any amount. So they can't go above that. Well, as I say, I mean, the Tribe is free to propose any amount in the contract that it likes. And the Bureau is free pursuant to one of the five exclusive declination rationales to decline a proposal that proposes funds beyond those that it would have otherwise provided. But that's precisely the issue in this case. The Bureau had the opportunity to do that and it failed to do so within the— I understand. And I'm saying, assuming that we agree with you and that there's a deemed contract. But what is it that you win? What is it that's going to be awarded? Under the statute, it's zero. So what will be awarded is what the Tribe requested because the deemed approval mechanism set forth in the statute supplants the Bureau's agreement that it would otherwise have provided. Was jurisdiction properly in the Board of Contract Appeals? Doesn't the statute provide appeals to the Federal District Court? That is an alternative avenue that the Tribe could have pursued, gone directly to the Federal District Court. Why is that alternative? Isn't that prescribed? I don't believe so, Your Honor. I think the Tribe can pursue directly in the Federal District Court or can also pursue a CDA claim, which is what the Tribe opted to do here. It also filed contemporaneously in the Interior Board of Indian Appeals. Am I right that the way that the jurisdiction goes is the Interior Board of Indian Appeals, if it's a pre-contract dispute and the CFC is if it is a post-contract dispute, is that fair? That's right. So why isn't this a pre-contract dispute? You have a deemed approval, but you don't actually have a contract yet. In fact, what you've asked us for in your remand is remand for the precise delineation of a contract. In fact, we do have a contract. Not just the Act itself and its regulations speak in terms of the proposal being deemed approved and awarded within the 90-day period. No, it says deemed approved and a contract shall be awarded. I thought the statute actually afforded of two separate things. There is a deemed approval and then there is a subsequent award of a contract, which would then take place pursuant to a deemed approval. Well, both the statute and its regulations provide that both deemed approval and award of the contract take place within that 90 days. So now they didn't comply, but that doesn't mean it morphed into a contract. How does an approval morph into a contract when they haven't actually given you the contract yet? You acknowledge that the proposal isn't just rubber stamped, that it is conformed into a contract. There's not even a signature line on the proposal for either party. And what you've actually asked for by way of relief is that we remand for the contract to be drawn up, created, and put into play. Well, I think what would take place on remand is any kind of gap-filling that would be required. What we know are the terms of the tribe's proposal would become part of the contract, as would, for example, the model self-determination agreement. But there are always conditions by the government that are added in as part of the contract, and that's what you're anticipating will occur as part of the actual articulation of the contract as opposed to the deemed approval of the proposal. I'm struggling. I don't see how this case squarely belongs in the Court of Federal Claims. I'm glad that you had the foresight to file in both places so that you preserved your rights in either case. Well, I mean, I think it's important to be precise about the language in the statute and in the regulations and in BIA's own handbook on this point. I mean, BIA's own handbook says... Yeah, but who cares about the handbook? What does the statute say? Because that's what we have to follow. We don't follow a handbook. Well, the statute says that both the deemed approval and the award take place in the 90 days. Yeah, but okay. And that happens as a matter of law. There's no... Well, where does it say it happens as a matter of law? Where does the statute say that? I'd have to reference... What precise statutory section are you talking about? F? 900.18, I believe, of the statute... of the regulations, excuse me. If I can grab the regulations. I believe it's F.A. 2 of the statute. A proposal that is not declined within 90 days is deemed approved and the secretary shall award the contract or any amendment or renewal within that 90 day period. Right. But they didn't. I mean, they didn't. They clearly violated the regulation. If you're right, you've got a deemed approval, and they haven't awarded the contract within 90 days. So what we can force them to do is award the contract, except if there isn't actually a contract, we don't actually have jurisdiction over this. It would go to the Indian Bureau. Well, the tribe's reading of that provision and the corresponding regulation, which I believe is 900.18... That's what I was reading. I'm sorry. I was reading 900.18. ...is that the approval and award of the contract take place as mandated by that language within the 90 day period. So there's no additional signature required, for example. But you recognize that there is an additional contract required, that the proposal doesn't delineate every precise term and that there will, in fact, be a contract. You expressly acknowledged that both in your briefing below and in your briefing to us. And the relief that you thought was a remand for the creation of that contract. Well, the relief that we're requesting is that the board declared that a contract exists. We don't know all the contract terms, but we know the important terms, namely those included in the tribe's proposals. Those become part of the contract by virtue of BIS having waived its ability to decline the contract by failing to respond within 90 days. And what would take place on remand is, as you suggested, gap filling in terms of the precise minor terms of the contract. Now, were these services that the BIA would otherwise provide, that's part of the authorization? These are services that the BIA is authorized to administer for the benefit of Indian tribes pursuant to federal law. So that language sets the ambit. But weren't the tribes doing it? I'm sorry, Your Honor. Weren't the tribes already performing these services? The tribe was performing these services on. So it's not a service that the BIA was providing and would transfer to the tribe. The tribe was already doing it. The Bureau provides these types of services to Indian tribes and their members. They weren't providing them to the Yurok tribe at the time of the tribe's request. But that's not what the ISDA requires. The ISDA simply requires that the programs be those authorized, that the secretaries authorized to administer for the benefit of Indians, in this case under the Snyder Act, which obligates the Bureau to provide for law enforcement and tribal justice services. And that's exactly what the tribe requested here. The legislative history is important to note on this point. The 1988 Senate report clarified that the tribes are eligible to contract for any program or function. Operated by the Bureau for the benefit of tribes, regardless of whether such specific programs or functions are operated locally. That is, as long as BIA is providing these funds to Indian tribes and their members, they're the proper subjects of a Title I proposal. And BIA must respond within the 90 days and decline. So this goes back to my initial question to you. So at one point, the BIA was providing these services. Those services were transferred over to the tribe. And the tribe is now performing. They've got one dispatcher, several officers, and they're looking for more. So even if we were to say, okay, we agree with this, it's a deemed-awarded contract. The contract's deemed-awarded. Then we look at what is it that the BIA is providing now and what funding? And the answer is zero. So what is it that's going to do with your contract? How does the BIA fulfill its obligation if its obligation is zero? Well, its obligation is not zero. I mean, the provision that we're talking about is the secretarial amount provision. And what that provision does is set a funding floor. It doesn't set a ceiling. If the BIA wants to decline a tribe's proposal for an amount in excess of that which it would have otherwise provided for those programs or services, it must decline within the 90 days set forth in the Act. Otherwise, the proposal is deemed approved. And I can see it. Let's say that the BIA was providing services at $5 million or $10 million, and we deem approved your contract. Then you'd have $5 or $10 million to go against. And you'd say we want part of all that money transferred over to us. But the BIA is not providing any services. There's zero dollars in right now. Well, I think where I would differ is that if the tribe proposed a funding in the amount of $6 million, say, and the Bureau is providing $5 million, okay, it couldn't provide less than the $5 million, but it could provide $6 million. And, indeed, it would be obligated as a matter of law to do so if it failed to decline a tribe's proposal within the time period set forth in the Act. Mr. Nesbitt, you're into your rebuttal time, which you wish to save. I'll reserve the remaining time. Thank you. Fine. We'll save it for you, Mr. Ashman. May it please the Court. Your Honors, this case raises a pre-award contract dispute that the Civilian Board of Contract Appeals cannot agree to. Why did you not argue that in your briefs? I was baffled. I went back and found that argument clear as day, presented below, argued effectively, and then the Board just didn't reach it, and then you didn't bring it up again. You argued it went through jurisdiction, which may or may not be correct. It might be a failure state of claim, might be jurisdiction. Why didn't you bring it back up in your brief to us, especially given your argument that it was a jurisdictional position? Your Honor, the Board's statement on its jurisdiction did state the general principle that all is necessary is a non-frivolous allegation of a contract. And when we reviewed it, we initially agreed with that. In this case, there is the statute, 450F, paragraph B, that also applies. And it was a mistake for us not to identify that, and we apologize for the inconvenience it has no doubt caused the Court. So you agree you went beyond – the 90-day period was triggered. So are you saying that the contract is deemed approved? No, Your Honor. As an issue matter, we don't agree that the 90 days was ever triggered. As we argued in our brief, the statute requires the 90 days to be triggered upon receipt of a proposal. And our position is there was never a legally sufficient proposal that was submitted to BIA. But you never challenged that. You never challenged – the law provides you a 90-day period to come back and challenge this type of a request or this type of a claim. And if you think it's not legally sufficient, you've got 90 – actually, you've got two periods. You can raise it up and have a 15-day period and ask for clarity, or you have 90 days in which to decline. But you didn't do that. That's correct, Your Honor. The BIA did not respond within 90 days. Do you agree that the statute's clear, that if you don't decline and decline according to some of those five statutory criteria, that it's deemed approved? It is clear, Your Honor, that 90 days is triggered after the receipt of a proposal, and there has to be a declination within one of the five stated reasons in the statute. But the statute also says the 90 days is triggered on receipt of a proposal. Now, BIA did respond to the tribe on October 28, 2011, saying the intent of their letter, their October 12, 2011 letter was not clear, and asked for further clarification. Which was kind of astonishing. The tribe's letter says Title I proposal on it, and then you're writing back and you're saying we're not clear if this is a – but you never did come back and say, under the statute and pursuant to the regulations, we hereby decline your request, whether it's Title I or otherwise, pursuant to the following criteria. You didn't do that. That's correct, Your Honor. That was not – BIA did not – we did not make that – And had you done that, we wouldn't be here today, correct? That's correct, Your Honor. But we're here because you didn't do it. So are we looking at a contract that's been deemed approved under your own regulations? No, Your Honor, because there's the second aspect of this that was discussed earlier. It's that a Self-Determination Act contract addresses existing programs or services. Why? The statute says, which the Secretary is authorized to administer for the benefit of the Indian. Isn't the Secretary authorized to administer police and judicial services for the benefit of Indians? Yes, Your Honor. So a self-determination contract can be granted on anything which the Secretary is authorized to administer for the benefit of Indians. You acquiesce that they are, in fact, authorized to administer exactly these programs for Indians. And they do for other tribes, just not for this particular tribe. I don't understand. That's the statute. The statutory provision that we would rely on for making this point, Your Honor, is Section 450J-1, which addresses the amount of funding which was being discussed earlier. 450J, give me a second to get to it. J-1, the amount of funding under the terms of the self-determination contract entered into pursuant to this chapter shall be not less than the Secretary would have otherwise provided for the benefit of the programs thereof for the period of the contract without regard to any organization level. So how do I know you wouldn't have provided? I mean, they're asking for a contract in the future for police and judicial services, and it says that what you can't give them is less than you would have otherwise provided. It doesn't say you can't give them more than what you would have otherwise provided, correct? That's correct, Your Honor. How we're relying on Section 450J-1, Paragraph A-1, is to inform our interpretation of ISDA of what is a contract. So our position is Congress could not have intended a scenario where BIA could approve a contract but not have to fund it. So in this case, there would be nothing under the statute. I don't understand this argument. I mean, the statute – I mean, approve but not have to fund it. Of course you have to fund it. Well, in this case, Your Honor, the BIA is not providing these programs or service. So this is 450 – And that's why you had an obligation to act within 90 days. This would have been one of the five statutory criteria under which you could have declined the contract expressly under the statute. This funding is one of them. But you didn't do that. So go back to your piggy bank and find the money. Yes, Your Honor. We agree. We agree with what – with that position. You agree with anything I just said? Okay, wow. That is – are you sure you want to agree with what I just said? We would like to clarify. The piggy bank part, does it cause you pause? It does, Your Honor. I apologize. To clarify, an issue is, was this a proposal for ISDA contract? They were requesting a program or service that does not exist. But they were requesting a program or service which the Secretary has authorized to give them. And that's what the statute says. The statute doesn't say transfer an existing program. The Secretary can make a self-determination contract for any program it would otherwise be authorized to give. So we do disagree on that interpretation, Your Honor. Fine. And we point to the Ninth Circuit's opinion on Lowe's Coyotes, which they interpreted Section 450J-1 to mean self-determination contracts address existing programs or services. But that's not – okay, wait. Do you have 450F in front of you? I do. I would like you to pull it out. So Part B is the part that's relevant to us, right? Big B. One big B. On 458, Your Honor? 450F, A, one big B. That's the part that's relevant to us, right? Yes, Your Honor. Right. And it says which the Secretary is authorized to administer. So any self-determination contract can be granted for anything the Secretary is authorized to administer. At least that's what the language says. You want me to limit it to only things it's already administering, not things it's authorized to, correct? So – Yes or no? Yes, Your Honor. Okay, now let's get to C. Look at C. Nobody raised C. But look at B, which says you can grant it on anything the Secretary is authorized to administer. Then look at C, which says this kind of contract can only be authorized if it's currently being, quote, provided by Secretary of Health and Human Services. So why does that not draw exactly the statutory distinction that you want me to morph into B? Congress knew how to say when a contract could only be awarded if it is currently being provided by an agency. It did so expressly in C with regard to health and human services contracts. But with regard to B, it went broader and said anything which the Secretary is authorized to provide, not which is already provided, just like C says, but which it is authorized to provide. Why isn't that important in the statutory interpretation given that the section right under it says already providing, provided by? Your Honor, C does say provided. We don't necessarily read it as being provided to make that distinction. But we would also point out that there are programs and services that BIA provides to Indians for their benefit that they cannot transfer to Indians controlled because of the trust responsibility. And as we tried to point out in our brief, that authorized to provide, that there is a distinction between there are things that BIA does for Indians for their benefit, such as land control. Even if that were true, that's not this case, right? This case isn't one of those unique situations where because of your trust responsibility, you can't turn something over to them, correct? That's correct, Your Honor. You're just trying to give me that as an example of why I shouldn't read the word authorized as broadly as I'm suggesting it needs to be read. I'm understanding, I don't want you to know, I'm understanding your argument, right? Yes, Your Honor. But I don't see how you can suddenly limit B to services that are already being provided by BIA when that's not what B says, it's clearly broader, and when C, in fact, limits it to services already being provided by HHS. I don't know. Our position, Your Honor, is that B has to be read in context with 450J-1. The one that says you can't award less than. Yes, and if it's a new program or service, you would have a situation in which… Well, guess what? He doesn't want less than what you gave him last year. He wants more than what you gave him last year. So I don't think that he would stand up here and suggest that he wants less, or that anything he's doing would implicate the less than. Yes, Your Honor. And if the court was to agree that this was a deemed approved contract and it went back to the board to work out the terms or to wherever, to the secretary to work out the terms, right now the secretary is not obligated to provide under the statute to provide the tribe anything more than zero because that's what's being provided right now. That's the secretarial amount. Well, but if it's deemed, as Judge Rayner was saying earlier, I mean, if it's already deemed approved, there is a proposal that's deemed approved, aren't you now on the hook for $5 million? Your Honor, no, Your Honor. The regulations state that the proposal does not become part of the contract unless the parties approve. And here the secretary could take objection to this funding amount under the statute. But he could have. Within the 90 days, he could have taken objection to the funding amount. Isn't this exactly what that 90-day period exists for? Your Honor, there's two steps to the process. There's the approval process, reviewing the proposal and approving it. And once it's approved, then it's the second step of working out the specific terms and issuing the contract. We're at that first step here. Is issuing the contract, issuing the check, is that the same thing? Under ISTA, it is, Your Honor, because it's your… Let's go back to the… Now, my understanding that your interpretation, the government's interpretation of the statute and its own regulations is that the deemed approval process, the deemed approved and the awarding of the contract process, it's all within that 90-day period, correct? Under the statute, it has to occur within that 90 days. That's your regulations, and that's how you've interpreted that statute as well. Yes, Your Honor. That if you do not decline a request for a contract or a claim within the 90 days, it's deemed approved, and plus you have a contract. So anything that takes place after that is a post-award contract activity. No, Your Honor. It's deemed approved, and then the secretary is commanded to take that second action of awarding the contract. But awarding the contract involves figuring out the contract's terms. Now, let me read again out of your handbook, and I know that your handbook's not lost, but it is your interpretation of your own regulations. It says, failure of an agency personnel to act within the 90-day period precludes the agency from asserting a declination issue and results in the award of a contract, contract amendment, contract renewal, a successor AFA, or the grant to waiver. So it results in the award of a contract. So it seems to me the only thing left here, if you agree that you didn't answer within the 90 days and the contract is deemed awarded, the only thing left to do is to go to step two, and that is for you to issue a check. Generally, yes, Your Honor, but it's more complicated than just issuing a check. You're saying that the contract isn't awarded on the 91st day as a matter of law, that something must occur, that the contract, there must be a passage of papers, and then that didn't occur. Yes, Your Honor. So it's free. Yes. It's free award. Yes, Your Honor. It's two steps. It's the approval of the proposal, but then there's the next step that if the 90 days passes, the secretary no longer has discretion to decline the proposal, but the secretary still has to make that second step. So you're saying it's still free award, and your failure to raise it on appeal here doesn't matter because it's jurisdiction. Yes, Your Honor. Your Honor, for these reasons, we respectfully request that the court remand the case to the CBCA with instructions to dismiss for lack of jurisdiction or any alternative to affirm the Board's decision. Thank you. Thank you, Mr. Ashman. Mr. Nesbitt has two plus minutes, two minus minutes. Just a few quick points in rebuttal, Your Honor. We've been speaking about the deemed approval and award process as a two-step process. At least that's been the subtext here. It's not a two-step process. The colloquy that I was having with Judge Moore earlier gets to this question. This is not a novel concept that the tribe is urging on the court. Courts have held this before. The Seneca case that we cite and discuss in our brief held that a BIA's failure to approve a proposal resulted in it being deemed  And so what's the paper contract, what's the paper version of the contract look like if it's just deemed approved? It looks like what the tribe proposed. And BIA's failure to decline amounts to its agreement to the terms of that proposal. The Cheyenne River Sioux case from South Dakota that we also cite in our briefs, also the same principle. Failure to decline results in it being deemed approved and awarded. The second point. The CBA ruled on the basis of a 12B6 motion, correct? Yes. So it took jurisdiction. It didn't rule it. It did not have jurisdiction. It ruled it on a 12B6. Correct. Is that because of an insufficiency of pleading of facts or because there's simply no relief to grant you? Well, what the board did is interpreted the regulations and held that there was no contract. No contract existed. Therefore, one of the prerequisites to bringing the claim was missing. But that was a misinterpretation of the statute that we've been discussing here today. The contract exists because it was deemed approved and awarded by operation of law. And so the board was wrong in that respect. Now, Mr. Ashman talked a fair amount about the proposal not being a valid proposal. Worth noting, very briefly, is that the proposal – Counsel, you want me to look at Seneca, but I don't see how Seneca supports your idea that the deemed approved proposal suddenly becomes the awarded contract. Seneca involved an already existing contract and a single line item amendment to that contract, which was the proposal. And, in fact, what the court held was because the contract and all of its provisions are clear, there was already a contract in place. All the provisions were clear. This is a single line item in the proposal. The court finds the nation letter proposed amendment to the contract became effective when the secretary failed to respond within 90 days. Isn't that a different situation that we have here? We don't have a clear A, already existing contract, or B, fully delineated terms. There are still things that need to be flushed out in the contract writing here. I don't think that the principle underlying the Seneca case hinges on whether we're talking about an amendment to an already existing Title I contract or a proposal for an entirely new contract. The statute speaks – doesn't distinguish between those two situations. That is, the deemed approval and award process is the same, whether it's an amendment or whether it's a new proposal. In the Cheyenne River suitcase, for example, the secretary purported to decline the proposal, but it did so insufficiently. And the court said deemed approved and awarded as requested by the tribe. Thank you, Mr. Ashman. We'll take the case under advisement. Thanks.